# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL TOMLINSON, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| BOROUGH OF NORRISTOWN, et al., | : | NO. 09-3711 |
| Defendants. | : | |

Baylson, J.                                                                                                                      April 21, 2011

## MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Michael and Sherry Tomlinson ("Plaintiffs") commenced a civil rights claim against the Borough of Norristown (the "Borough"), Police Officer Lori Koch, and Police Officer Dan Lerman (collectively with Koch, "individual Defendants") pursuant to 42 U.S.C. § 1983. (Compl. ¶¶ 22-34, ECF No. 1.) In their original complaint, Plaintiffs assert six claims, several of which the Court has already dismissed, with prejudice. Presently before the Court is Defendants' Motion for Partial Summary Judgment. (Mot. Summ. J., ECF No. 20.)

**I.**     **Procedural History**

Plaintiffs' original complaint, filed on August 13, 2009, alleges various constitutional and other violations stemming from the August 13, 2007 arrest of Mr. Tomlinson and the issuance of a summary citation to Mrs. Tomlinson.[1] (Compl.) Mr. Tomlinson was charged with resisting arrest, obstruction of the administration of justice, and four counts of disorderly conduct. (Mot. Summ. J. Ex. 3.) In the Montgomery County Court of Common Pleas, Judge Carpenter

---

[1] The Complaint contends that the arrest occurred on August 13, 2009. (Compl. ¶ 10.) In its Memorandum on Motion for Partial Dismissal, the Court concluded that Officers Koch and Lerman arrested Mr. Tomlinson on August 13, 2007. (Memo. ECF No. 10, at 1 n.1.).

dismissed the resisting arrest and two of the disorderly conduct charges. (Mot. Summ. J. Ex. 4.) Plaintiff was convicted of the remaining charges. (Id.) Mrs. Tomlinson was charged with disorderly conduct and was found not guilty by a District Court Judge in Montgomery County. (Michael Tomlinson Dep. 20:15-22, Aug. 13, 2010.)

The original Complaint included six claims. (Compl. ¶¶ 22-34.) First, Plaintiffs claimed that all Defendants, "acting in concert and conspiracy," used excessive force(Count I), falsely arrested and/or imprisoned Plaintiffs (Count II), invaded Plaintiffs' privacy or cast them in a false light (Count III), and intentionally inflicted emotional distress upon Plaintiffs (Count IV). (Id.) Additionally, Plaintiffs allege that the Borough failed to adequately train or control Officers Koch and Lerman (Count V) and that those officers violated Plaintiffs' Due Process and Equal Protection rights (Count VI). (Id.)

On April 5, 2010, on motion, the Court dismissed with prejudice all claims against the Borough in Counts I, II, III, IV, and VI; all claims brought against individual Defendants acting in their official capacities; Mr. Tomlinson's false arrest and false imprisonment claims in Count II; all claims in Count III; and all punitive damages claims in Counts V and VI. (Order, ECF No. 11.)

Defendants contend that they are entitled to partial summary judgment as to all remaining claims against the Borough of Norristown and the claims for intentional infliction of emotional distress, conspiracy, violation of equal protection, violation of 42 U.S.C. § 1985 and § 1986, and violation of the Due Process Clause against Officer's Koch and Lerman. (Mot. Summ. J.) Defendants also move for summary judgment on Mrs. Tomlinson's false arrest claim. (Id.)

If Defendants' Motion is granted, the only claims remaining for trial are each Plaintiff's claims against Officers Koch and Lerman for excessive use of force. Plaintiffs do not oppose Defendants' Motion for Partial Summary Judgment.[2] (Pls.' Letter (on file with the Court).)

**II.    Factual History**

The relevant facts, construed in favor of the Plaintiffs, are set forth below. Sometime during the evening of August 13, 2007, Plaintiffs, both African-American residents of Norristown, Pennsylvania, arrived at their home after attending their son's football practice. (Michael Tomlinson Dep. 7:14-8:11.) Plaintiffs stopped to purchase beer before they returned home. (Id. at 10:11-13.) Upon arriving at their home, Plaintiffs found that Mr. Tomlinson's brother, Barrington Tomlinson, and Barrington's friend, Mike McKenzie, were sitting outside of Plaintiffs' home. (Id. at 11:10-16.) After setting the beer down outside near his brother and Mike, Mr. Tomlinson entered his home to get his dog before joining Barrington and Mike outside in the backyard. (Id. at 16:12-15.) Mr. Tomlinson first noticed Officers Koch and Lerman when he returned to the yard. (Id. at 16:17-19.)

Mr. Tomlinson stated that Officer Lerman instructed him to "stay in the yard" and then to "go back in the house." (Id. at 17:13-23.) Mr. Tomlinson responded by stating that he wanted to get his beer and would comply with the officer's command after he had done so. (Id.) Before he was able to pick up the beer, Mr. Tomlinson alleges that Officer Lerman "lunge[d] up and

---

[2] Local Civil Rule 7.1(c) provides in relevant part:

> "Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion … [A] summary judgment motion, to which there has been no timely response, will be governed by Fed. R. Civ. P. 56[]."

smack[ed] [him] in [his] face." (Id.) Mr. Tomlinson alleged that Officer Lerman then grabbed him by his dreadlocks and dragged him over some boulders, toward his police car. (Id. at 19:2-4.) Mr. Tomlinson then admits to resisting the officer's attempt to place him in handcuffs. (Id. 25:5-9.) He alleges that during his resistance, Officer Lerman placed him in a "choke-hold" and "maced" him. (Id. 22:12-13.) Mr. Tomlinson stated that at this point Officer Koch assisted Officer Lerman in placing him in handcuffs and into the back of the police vehicle. (Id. at 30.)

Upon hearing the commotion outside, Mrs. Tomlinson came outside and observed the interaction. (Sherry Tomlinson Dep. 12, Aug. 13, 2010.) She alleges that when she came outside Officer Koch approached her, told her to "keep away," and grabbed her by her throat. (Id. 13:7-16.) Mrs. Tomlinson alleges that, as a result of this interaction, she had a red mark on her throat that lasted approximately seven days. (Id. at 18:3-10.) Mrs. Tomlinson was never placed in handcuffs, nor was she detained. (Id. at 22:16-20.) She received a citation for disorderly conduct and was found not guilty of the charge in district court. (Id. at 20:15-22.) She did not seek or receive any medical treatment as a result of any injuries that may have been sustained following the incident. (Id. 18:11-14.)

Mr. Tomlinson was transported to the police station, where paramedics "flushed [his] eyes." (Michael Tomlinson Dep. 35:2-11.) He was detained in a cell until his preliminary hearing the next morning, at which time he was released until trial. (Id. at 39:22-40:10.) Following a trial before Judge Carpenter of the Court of Common Pleas of Montgomery County, Mr. Tomlinson was found guilty of obstructing the administration of law or other governmental function and disorderly conduct and sentenced to a term of probation and a fine. (Id. 56:8-16.)

Mr. Tomlinson was treated by a family physician for physical injuries, including pain and tingling in his arm. (Id. 46-51.) His treatment consisted of therapeutic exercises. (Id.) He did not seek or receive any form of psychological treatment, though he does state that he was impacted emotionally in that he is "embarrassed" by the incident and "isolates" himself. (Id. at 52:13-20.)

### III. Legal Standards

#### A. Jurisdiction

The Court has federal question jurisdiction under 28 U.S.C. § 1331, as this action is brought pursuant to 42 U.S.C. § 1983 and Plaintiffs allege violations of their federal constitutional rights. Venue is proper under 28 U.S.C. § 1391(b).

#### B. Standard of Review

Summary judgment is appropriate if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the non-moving party fails to rebut

---

[3] Amendments to the Federal Rules of Civil Procedure became effective on December 1, 2010. The oft-cited summary judgment standard formerly found in Rule 56(c) is now located in Rule 56(a), with one alteration: the substitution of the word "dispute" for the word "issue," which the Rules Advisory Committee explained better describes the summary judgment inquiry, but does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56(a); Fed. R. Civ. P 56 advisory committee's note.

by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

IV. **Discussion**

    A. **Mrs. Tomlinson's False Arrest Claim**

Defendants argue that they are entitled to summary judgment on Mrs. Tomlinson's false arrest claim because she lacks sufficient evidence to establish a Fourth Amendment seizure. (Mot. Summ. J. at 5.) The Court agrees that there is insufficient evidence for Mrs. Tomlinson's false arrest claim to stand.

Federal claims of false arrest made pursuant to 42 U.S.C. § 1983 are grounded in the Fourth Amendment guarantee of protection from unlawful seizure. Albright v. Oliver, 510 U.S. 266, 271 (1994). As such, a Plaintiff asserting a claim of false arrest under 42 U.S.C. § 1983 must be able to show that there was a seizure. Id. Because Mrs. Tomlinson was not seized, her claim of false arrest cannot stand.

In Terry v. Ohio, 392 U.S. 1, 19 (1968), the Supreme Court held that seizure occurs "where [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Since that ruling, the Court has further refined the scope of the word seizure as it relates to possible Fourth Amendment violations. In California v. Hodari D., 499 U.S. 621, 626 (1991), for example, the Court held that "[a]n arrest requires either physical force … or, where that is absent, submission to the assertion of authority."

In Crock v. Pennsylvania, 397 F. App'x 747, 750 (3d. Cir. 2010), the Third Circuit held that the issuance of a citation by an officer does not constitute a "seizure" under the Fourth Amendment. Citing Hodari, the Court held that, in issuing the citation, there was no attempt by the officer to restrain Crock's liberty and dismissed his complaint as without merit. Id. at 750. Similarly, in Kartorie v. Dunham, 108 F. App'x 694, 700 (2004), the Third Circuit held that the issuance of a summary citation does not result in a seizure or restriction of liberty.

Officer Koch issued Mrs. Tomlinson a citation for disorderly conduct, via the United States Postal Service, later in the day on August 13, 2007. (Mot. Summ. J. Ex. 5.) Mrs. Tomlinson received the citation in the mail "a couple days later." (Tomlinson Dep. 20:15-18.) The issuance of a citation by mail is similar to the citations at issue in Crock and Kartorie in that it did not result in a seizure or any restriction of liberty. Because the issuance of the citation does not involve the use of force or submission to authority, Mrs. Tomlinson was not seized and her claim of false arrest fails.

Further, Mrs. Tomlinson's allegation that Officer Koch "choked her" does not provide sufficient evidence to establish a Fourth Amendment seizure. The Supreme Court held in United States v. Mendenhall, 446 U.S. 544, 554 (1980), that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that [she] was not free to leave." Mrs. Tomlinson admits in her deposition testimony that after Officer Koch "choked her" and asked her to "keep away" she was never taken into custody or told that she was not free to leave. She did in fact leave to "call the police on the police." (Sherry Tomlinson Dep. 19:5-12.) Consequently, Mrs. Tomlinson was not seized and cannot maintain a false arrest claim.

### B. Plaintiffs' 42 U.S.C. § 1986 Claims

Defendants argue that they are entitled to summary judgment on Plaintiffs' claims under 42 U.S.C. § 1986 because they are time barred. (Mot. Summ. J. at 6.) The Court agrees and will grant Defendants summary judgment on this claim. In pertinent part, § 1986 reads, "But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." Plaintiffs filed their Complaint on August 13, 2009, two years after the arrest and issuance of the citation. (Compl.)

Count V of Plaintiffs' Complaint alleges that the Borough violated Plaintiffs' civil rights under 42 U.S.C §§ 1983, 1985, and 1986 by failing to adequately supervise, train and or control Officers Koch of Lerman, and by condoning their actions. (Id.) Count V also alleges that Defendants Koch and Lerman violated Plaintiffs civil rights, in violation of 42 U.S.C §§ 1983, 1985, and 1986. (Id.) Because the alleged violations occurred more than two years prior to the filing of the Complaint, any claims under 42 U.S.C § 1986 are time barred and summary judgment for the Defendants is appropriate. (Id.) See Salcedo v. Town of Dudley, 629 F. Supp. 2d. 86, 99 (D. Mass. 2009) (holding that a claim under 42 U.S.C. § 1986 is subject to a one-year statute of limitations period which begins tolling at the time of arrest) (citing Burnett v. Grattan, 468 U.S. 42, 44 n.5 (1984)); see also Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d. Cir. 1989) (noting § 1986 actions subject to one-year statute of limitations).

### C. Plaintiffs' Equal Protection Clause and 42 U.S.C. § 1985 Claims

Defendants argue that there is nothing in the Plaintiffs' Complaint that alleges that they were treated differently than others similarly situated and, therefore, they are entitled to summary judgment on Plaintiffs' Equal Protection and 42 U.S.C. § 1985 claims. (Mot. Summ. J. at 7.)

The Court agrees and will grant Defendant's motion as to these claims. The Supreme Court has framed the Equal Protection Clause as "essentially a direction that all persons similarly situated should be treated alike." Plyler v. Doe, 456 U.S. 202, 216 (1982). Plaintiffs' failure to allege that they were treated differently than others who are similarly situated is therefore fatal to their equal protection claim.

The only possible basis for liability under § 1985 is under subsection (3), which prohibits depriving persons of rights or privileges. See 42 U.S.C. § 1985(3). Plaintiffs have, as a matter of law, failed to establish a basis for liability under this section. The Supreme Court has held that to state a claim under § 1985(3), a plaintiff must allege a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Griffin v. Breckenridge, 403 U.S. 88, 103 (1971). Further, the Court has noted that a plaintiff must also show that one or more of the conspirators "did, or caused to be done, any act in furtherance of the object of the conspiracy whereby another was injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States." Id.

The Third Circuit held in Farbor v. City of Patterson, 440 F.3d 131, 134 (3d. Cir. 2006), that for a plaintiff to be successful on a claim under § 1983(3), they must also show "some racial, or perhaps otherwise class based, invidiously discriminatory animus" behind the actions of the defendant. Because Plaintiffs have failed to allege any defendants acted with discriminatory animus, racial or otherwise, their claims under § 1985 fail. Further, there is no evidence in the record to suggest Defendants entered into a conspiracy to deprive Plaintiffs' of equal protection under the law.

### D. Plaintiffs' Conspiracy Claims

Defendants argue that they are entitled to summary judgment on Plaintiffs' conspiracy claims because Plaintiffs have failed to establish sufficient facts to establish a conspiracy. (Mot. Summ. J. at 8.) The Court agrees and will grant summary judgment on these claims.

Plaintiffs allege in their Complaint that Defendants were acting in "concert and conspiracy." (Compl. ¶ 23.) The Third Circuit has held that a successful § 1983 conspiracy claim must show a "combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974). Plaintiffs must show more than just that the "end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997). There must be a showing of actual agreement between the parties, as "[a]greement is the sin qua non of a conspiracy." Id.

There is simply nothing in the record to show that there was a combination, agreement, or understanding between the Defendants. This is fatal to Plaintiffs' conspiracy claims and summary judgment in Defendants' favor is appropriate.

### E. Plaintiffs' Monell Claim against the Borough

Defendants argue that they are entitled to summary judgment on Plaintiffs' Monell claim because Plaintiffs failed to establish a causal relationship between a policy, practice, or custom of the Borough and their allegations of excessive use of force or any other alleged constitutional violation. (Mot. Summ. J. at 11.) Count V of Plaintiff's Complaint alleges that the Borough "violated the Plaintiffs' civil rights protected by 42 U.S.C. §§ 1983, 1985, and 1986 by failing to

adequately supervise, train, and/or control Defendants Koch and Lerman, and by condoning their actions." (Compl. ¶¶ 39-43.) Claims of this nature must satisfy the standard set forth in Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978), which requires a showing of "deliberate indifference." This standard is met "where a failure to train reflects a deliberate or conscious choice made by the municipality." City of Canton v. Harris, 489 U.S. 378 (1989); see also Reitz v. County of Bucks, 125 F.3d 139 (3d Cir. 1997) (stating that absent an actionable policy or actionable failure to train on the part of the municipality, there could be no municipal liability under Monell).

To establish liability, a plaintiff must show that a particular policy or custom of the municipality resulted in the constitutional violation. Kelly v. Borough of Carlisle, 622 F.3d 248, 263 (3d Cir. 2010). A "policy" includes "official proclamations made by a municipal decisionmaker with final authority" while customs are "practices of state officials…so permanent and well settled as to virtually constitute law. Id. (quoting Berg v. County of Allegheny, 219 F.3d 261, 275 (3d. Cir. 2000)).

To establish liability against the municipality on the basis of failure to supervise, a plaintiff must identify a specific supervisory practice that the defendant failed to employ, contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and circumstances under which the supervisor's inaction could be found to have communicated a message of approval. C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000).

Plaintiffs have failed, as a matter of law, to show the Borough acted with "deliberate indifference." There is no evidence in the record to establish that there was a municipal custom

or policy in place that resulted in any violations of Plaintiffs' federal rights. The undisputed deposition testimony of both Officer Koch and Officer Lerman shows that both officers graduated from a municipal police academy and maintained their certification as police officers in compliance with Pennsylvania law. (Koch Dep. 4:11-20; Lerman Dep. 4:18-21.) Additionally, the record shows that the Borough had in place procedures for both citizen complaints against officers and procedures for disciplining officers. (Lerman Dep. 5:18-7:12.) Further, neither officer has been a disciplinary problem in the past. (Koch Dep. 7:3-10.)

Because Plaintiffs have failed to identify a policy, custom or insufficient supervisory practice, and have failed to show deliberate indifference on the part of the Borough, they cannot, as a matter of law, succeed on their Monell claims. Accordingly, Defendant's motion will be granted as to this claim.

### F. Plaintiffs' Due Process Claims

Defendants argue that they are entitled to summary judgment as to Plaintiff's Due Process claims. (Mot. Summ. J. at 9.) The Court agrees and will grant Defendants' motion on these claims.

The Supreme Court has held that a claim for a violation of Due Process requires first, a showing that a substantive right has been denied, and second, that the right was denied without adequate procedures. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). Plaintiffs allege no facts that tend to show a violation of their Due Process rights. Nothing in the record suggests that they were deprived of any rights or in any way mistreated at any time after the evening of August 13, 2007. They make no allegations that the criminal procedure provided to them was flawed in any way.

Therefore, any potential Due Process violation alleged in their Complaint must be based on their arrest, but the Third Circuit has held that "the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis." Berg, 219 F.3d at 268. Similarly, the Supreme Court has held that "[a]ll claims that law enforcement officers have used excessive force- deadly or not- in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment." Graham v. Conner, 490 U.S. 386, 395 (1989). Because Plaintiffs only complain about the arrest and not the subsequent criminal procedure, Plaintiffs do not allege a valid Due Process claim.

### G. Plaintiffs claims for Intentional Infliction of Emotional Distress

Defendants argue that they are entitled to summary judgment as to Plaintiffs' claims of intentional infliction of emotional distress because Plaintiffs have failed to plead adequate facts to establish liability for intentional infliction of emotional distress. (Mot. Summ. J. at 10.) The Court agrees and will grant Defendant's motion.

Plaintiffs claim of intentional infliction of emotional distress must be analyzed under relevant Pennsylvania tort law. 28 U.S.C. § 1652. Under Pennsylvania law, to successfully state a claim for intentional infliction of emotional distress, the allegation "must be supported by competent medical evidence." Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987). The Third Circuit has interpreted this standard as "limiting the scope of liability by requiring competent medical evidence of causation and severity." Williams v. Guzzardi, 875 F.2d 46, 52 (3d Cir. 1989). Plaintiffs did not receive medical treatment for any emotional distress suffered as a result of the actions of the Defendants. Therefore they cannot, as a matter

of Pennsylvania law, maintain a claim for intentional infliction of emotional distress. Accordingly, Defendants are entitled to summary judgment on this claim.

### V. Conclusion

For all the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment in its entirety. The only claims remaining for trial are each Plaintiff's excessive force claims against Officer Koch and Officer Lerman.

An appropriate Order will follow.

O:\Todd\09-3711 Tomlinson v. Norristown et al\Tomlinson - MSJ Memo - draft 1.wpd